## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| STRUCTURLAM MASS TIMBER U.S., INC., *et al.*, | Case No. 23-10497 (CTG) |
| Debtors. | (Jointly Administered) |
| HEATHER L. BARLOW AS LIQUIDATING TRUSTEE OF THE STRUCTURLAM LIQUIDATING TRUST, | Adversary No. 25-51040 (CTG) |
| Plaintiff, | |
| v. | |
| BRIAN HOOPER, CINDI MARSIGLIO, AND CHRISTINE ALLEN, | |
| Defendants. | |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO
## DISMISS PLAINTIFF'S COMPLAINT

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ..................................................................................................1

II.    ARGUMENT .........................................................................................................2

    A.    Plaintiff's Breach of Fiduciary Duty Claim Is Time-Barred ...................................2

        1.    Delaware's Borrowing Statute Requires Application of British Columbia's Two-Year Statute of Limitations................................................3

        2.    Plaintiff's Cited Cases Support Dismissal ..................................................5

    B.    Plaintiff's Breach of Fiduciary Duty Claim Should Be Dismissed ........................6

        1.    Defendants Only Owed Fiduciary Duties to SLP ........................................6

        2.    The Opposition Confirms Plaintiff Improperly Group Pleads....................8

        3.    Plaintiff Fails to Allege Defendants Breached Their Fiduciary Duties ........................................................................................................9

            a.    Plaintiff Does Not Plead a Breach of the Duty of Care .................9

            b.    Plaintiff Fails to Allege a Breach of the Duties of Loyalty or Good Faith ..............................................................................10

    C.    Plaintiff's Tortious Interference Claim Should Be Dismissed .............................13

    D.    The Complaint Should Be Dismissed With Prejudice ..........................................15

III.    CONCLUSION...................................................................................................15

# TABLE OF AUTHORITIES

## CASES

*California Safe Soil, LLC v. KDC Agribusiness, LLC*,
2025 WL 98479 (Del. Ch. Jan. 10, 2025) ............................................................... 14

*CRE Niagara Holdings, LLC v. Resorts Grp., Inc.*,
2022 WL 1749181 (Del. Super. Ct. May 31, 2022) ............................................. 15

*David B. Lilly Co. v. Fisher*,
799 F. Supp. 1562 (D. Del. 1992) ............................................................................ 5

*Faulkner v. Ark. Child.'s Hosp.*,
69 S.W.3d 393 (Ark. 2002) ...................................................................................... 13

*Genworth Fin., Inc. Consol. Deriv. Litig.*,
2021 WL 4452338 (Del. Ch. Sept. 29, 2021) ........................................................ 9

*Hunt v. Riley*,
909 S.W.2d 329 (Ark. 1995) ................................................................................... 15

*In re AgFeed USA, LLC*,
546 B.R. 318 (Bankr. D. Del. 2016) ...................................................................... 10

*In re Art Inst. of Phila. LLC*,
2022 WL 18401591 (Bankr. D. Del. Jan. 12, 2022) .................................... 1, 3, 4, 5

*In re Cred Inc.*,
650 B.R. 803 (Bankr. D. Del. 2023), *aff'd*, 658 B.R. 783 (D. Del. 2024) ............... 12

*In re DSI Renal Holdings, LLC*,
574 B.R. 446 (Bankr. D. Del. 2017) ...................................................................... 12

*In re Essar Steel Minn. LLC*,
2019 WL 2246712 (Bankr. D. Del. May 23, 2019) .......................................... 11, 12

*In re Furniture Factory Ultimate Holding, L.P.*,
2023 WL 5662747 (Bankr. D. Del. Aug. 31, 2023) ............................................... 8

*In re Midway Games Inc.*,
428 B.R. 303 (Bankr. D. Del. 2010) ...................................................................... 11

*In re Old BPSUSH, Inc.*,
2020 WL 6818435 (Bankr. D. Del. June 30, 2020) ............................................... 10

*In re: Old Bpsush, Inc.*,
2021 WL 4453595 (D. Del. Sept. 29, 2021) ............................................................... 13

*In re Our Alchemy, LLC*,
2019 WL 4447519 (Bankr. D. Del. Sept. 16, 2019) ......................................... 7, 8

*In re Our Alchemy, LLC*,
2019 WL 4447541 (Bankr. D. Del. Sept. 16, 2019) ............................................... 15

*In re PennySaver USA Publ'g LLC*,
587 B.R. 445 (Bankr. D. Del. 2018) ................................................................... 8, 9

*In re Sols. Liquidation LLC*,
608 B.R. 384 (Bankr. D. Del. 2019) ........................................................................ 11

*In re Space Case*,
2024 WL 1628440 (Bankr. D. Del. Apr. 15, 2024) .............................. 10, 12, 13

*In re Tops Holding II Corp.*,
646 B.R. 617 (Bankr. S.D.N.Y. 2022) ....................................................................... 6

*In re Zohar III, Corp.*,
2021 WL 3124298 (Bankr. D. Del. July 23, 2021) ................................................. 14

*Kahn v. Lynch Communication Systems, Inc.*,
638 A.2d 1110 (Del. 1994) ..................................................................................... 7

*Lutz v. Philips Elecs. N. Am. Corp.*,
347 F. App'x 773 (3d Cir. 2009) ........................................................................... 15

*Norman v. Elkin*,
860 F.3d 111 (3d Cir. 2017) .............................................................................. 5, 6

*Pfeffer v. Redstone*,
965 A.2d 676 (Del. 2009) ....................................................................................... 12

*Posman v. Bankers Tr. Co.*,
1999 WL 33742299 (Bankr. D. Del. July 28, 1999) ......................................... 9, 11

*Quadrant Structured Prods. Co. v. Vertin*,
102 A.3d 155 (Del. Ch. Oct. 1, 2014) ............................................................... 6, 7

*Saudi Basic Indus. Corp. v. Mobil Yanbu Petrochemical Co.*,
866 A.2d 1 (Del. 2005) ........................................................................................ 1, 4

*Trenwick Am. Litig. Tr. v. Ernst& Young, L.L.P.*,
2006 WL 4782378 (Del. Ch. Aug. 10, 2006) ........................................................ 8

*Triple H Fam. Ltd. P'ship v. Neal,*
  2018 WL 3650242 (Del. Ch. July 31, 2018)............................................................................... 7

*United States ex rel. Zizic v. Q2Administrators, LLC,*
  728 F.3d 228 (3d Cir. 2013)..................................................................................................... 15

*Watkins v. Int'l Union, Sec., Police & Fire Pros. of Am.,*
  2016 WL 1166323 (D. Del. Mar. 23, 2016) ............................................................................ 15

*Willensky v. Lederman,*
  2015 WL 327843 (S.D.N.Y. Jan. 23, 2015) .............................................................................. 6

**STATUTES**

10 *Del. C.* § 8121 ............................................................................................................................ 1, 4

## I.       INTRODUCTION

Plaintiff's Opposition highlights at least four deficiencies in her Complaint—all of which warrant dismissal. *First*, Plaintiff's breach of fiduciary duty claim is barred by British Columbia's two-year statute of limitations. That jurisdiction's law governs the fiduciary duty claim under the "internal affairs" doctrine, which provides that the law where an entity is formed applies to corporate governance disputes. Plaintiff concedes both that Defendants were SLP directors and SLP was a British Columbia corporation. She argues, however, for Delaware's three-year limitations period because the internal affairs doctrine "does not apply to procedural issues, such as the statute of limitations." Response to Defendants' Motion to Dismiss ("Opposition" or "Opp.") at 1 (Dkt. 42). That may be true generally, but Plaintiff ignores the exception in Delaware's "borrowing statute." *See* 10 *Del. C.* § 8121. Under this statute, the Court uses the shorter of Delaware's statute of limitations *or* the statute of the jurisdiction where the action arose to prevent Plaintiff from forum-shopping by "circumventing the shorter limitations period." *In re Art Inst. of Phila. LLC*, 2022 WL 18401591, at *8 (Bankr. D. Del. Jan. 12, 2022) (quoting *Saudi Basic Indus. Corp. v. Mobil Yanbu Petrochemical Co.*, 866 A.2d 1, 16-17 (Del. 2005)). Because Plaintiff's claim "arose under" British Columbia law per the internal affairs doctrine, Delaware's borrowing statute applies British Columbia's two-year statute of limitations. Plaintiff concedes she did not file her claim within two years—the claim thus should be dismissed as untimely.

*Second*, even if timely, Plaintiff has not adequately alleged a breach of fiduciary duty. As to the duty of care, Plaintiff admits that she needed to plead that Defendants "fail[ed] to inform themselves fully and in a deliberate manner." Opp. at 16-17. Plaintiff speculates in her Opposition that Defendants "did not know basic facts about SLP," but she did not allege this in her Complaint and cannot amend her pleading in her Opposition. In any event, Plaintiff's own allegations show

that Defendants closely monitored SLP and did not "fail to inform themselves" of anything.

*Third*, and relatedly, as to the duty of loyalty and good faith, Plaintiff concedes she needed to plead that Defendants stood on both sides of a transaction and dictated its terms "in a self-dealing way" or "received in the transaction a personal benefit that was not enjoyed by the shareholders generally." *Id.* at 13. Plaintiff does not allege that any Defendant received a "personal benefit." And while she *concludes* that Defendants "used confidential information gleaned from their" board service to assist Walmart "in its insistence on unreasonable modification to and performance demands under TSA 2 [the relevant contract]," Plaintiff identifies no supporting *facts*. At most, she notes that certain Defendants participated in meetings with SLP leadership about production progress—but never alleges what Defendants said or did in these meetings, much less that they "dictated terms" in a "self-dealing way."

*Finally*, Plaintiff has not alleged tortious interference with contract. She admits both that employees acting within the scope of their employment cannot tortiously interfere with their employer's contract *and* that Defendants were Walmart employees—and alleges no facts showing Defendants acted outside their employment. On the contrary, Plaintiff repeatedly asserts that Defendants acted to "benefit Walmart." *Id.* at 27. The Complaint should be dismissed with prejudice because Plaintiff cannot fix her fatal pleading flaws. She concedes she did not file within the two-year limitations window. And she asserts that Defendants acted within the scope of their Walmart employment. Amendment cannot, and should not be permitted to, change these positions.

## II.    ARGUMENT

### A.    Plaintiff's Breach of Fiduciary Duty Claim Is Time-Barred

Plaintiff does not dispute—and thus concedes—that (1) Defendants served as directors only on SLP's Board; (2) SLP is a British Columbia corporation; (3) British Columbia has a two-

year statute of limitations for breach of fiduciary duty claims; and (4) Plaintiff's breach of fiduciary duty claim would be time barred if British Columbia's statute of limitations applies. These undisputed facts confirm that Plaintiff's fiduciary duty claim should be dismissed as untimely. In her Opposition, however, Plaintiff insists that Delaware's three-year limitations period, not British Columbia's shorter period, applies and thus saves her claim. Plaintiff's own cited authority shows she is wrong, and her claim should be dismissed.

      **1.**      **Delaware's Borrowing Statute Requires Application of British Columbia's Two-Year Statute of Limitations**

Plaintiff contends that the "internal affairs doctrine does not apply to procedural issues such as limitations periods," and so Delaware's statute of limitations should apply. Opp. at 8. In support, she cites the Court's decision in *In re Art Institute of Philadelphia*, 2022 WL 18401591. Opp. at 8. But *Art Institute* highlights why Plaintiff's claim is untimely. There, a trustee brought fiduciary duty claims against former officers and directors of legal entities organized under both Delaware and Pennsylvania law. 2022 WL 18401591, at *1. The parties disagreed over which choice-of-law principles governed *and* which statute of limitations applied. *See id.* at *5-10. As to the first question, the Court stated that under "the internal affairs doctrine, which is the governing choice-of-law principle under both Delaware law and the *Restatement [(Second) of Conflict of Laws]* approach, the law of the state under whose laws the legal entity is organized governs the fiduciary duties of that entity's officers and directors." *Id.* at *6. This meant that Delaware law applied to claims alleging breach of fiduciary duties owed to Delaware entities and Pennsylvania law applied to claims alleging breach of fiduciary duties owed to Pennsylvania entities. *See id.* Applying that "internal affairs" principle here, British Columbia law applies to Plaintiff's fiduciary duty claim against directors of a British Columbia entity, SLP. Plaintiff again

does not dispute that British Columbia law governs the *substantive* fiduciary duty claim.

And that's where the second part of the Court's *Art Institute* analysis comes into play.  The Court noted that Delaware law "typically treats the statute of limitations as *procedural* rather than substantive—meaning that a Delaware state court hearing a claim governed by the law of another state would apply the Delaware statute of limitations, not the statute of the jurisdiction whose substantive law would control."  *Id.* at *8.  Indeed, Plaintiff quotes this part of the *Art Institute* opinion in her Opposition to argue that Delaware's longer limitations period applies.  *See* Opp. at 8.  But Plaintiff omits the Court's very next sentence: "Delaware law, however, provides for an exception to this principle in the state's 'borrowing statute.'"  *Art Inst.*, 2022 WL 18401591, at *8.

The borrowing statute "effectively prohibits a plaintiff from obtaining a longer statute of limitations" on claims "for injuries that occur in other states" by filing in Delaware.  *Id.*  The statute provides:  "[w]here a cause of action arises outside of [Delaware], an action cannot be brought to enforce such cause of action after the expiration of whichever is shorter, the time limited by the law of this State, or the time limited by the law of the state . . . where the cause of action arose, for bringing an action upon such cause of action."  *Id.* (quoting 10 *Del. C.* § 8121).  The *Art Institute* Court, quoting the Delaware Supreme Court, explained that the statute "address[es] a specific kind of forum shopping scenario—cases where a plaintiff brings a claim in a Delaware court that (i) arises under the law of a jurisdiction other than Delaware and (ii) is barred by that jurisdiction's statute of limitations but would not be time-barred in Delaware, which has a longer statute of limitations."  *Id.* (quoting *Saudi Basic*, 866 A.2d at 16).

The Court concluded that because fiduciary duty claims "arise under" the law of the state of incorporation, the Delaware borrowing statute would apply Pennsylvania's two-year statute to claims against Pennsylvania-entity fiduciaries, and Delaware's three-year statute to Delaware-

entity fiduciaries.  So too here, where (1) the fiduciary duty claim "arises under" British Columbia law under the internal affairs doctrine; and (2) British Columbia's two-year statute of limitation applies (and bars Plaintiff's claim) under Delaware's borrowing statute.

This former point refutes Plaintiff's argument that the *Restatement* supports applying Delaware's or Arkansas's limitations period.  Plaintiff contends that "British Columbia has almost nothing to do with this case, while Delaware and Arkansas are inextricably connected to it."  Opp. at 9.  But Plaintiff's fiduciary duty claim against directors of a British Columbia corporation with its principal place of business in British Columbia (Compl. ¶¶ 1, 18) "arises under" British Columbia law, not Delaware or Arkansas law.  *Art Institute*, 2022 WL 18401591, at *9.  By contrast, Defendants did not serve as directors in a Delaware corporation and no relevant events occurred in Delaware.  And Plaintiff's own argument rejects application of Arkansas's statute of limitations.  After all, if the statute of limitations is a procedural issue such that the forum state's law applies, a *Delaware* court would not apply an *Arkansas* statute of limitations.

### 2.    Plaintiff's Cited Cases Support Dismissal

Plaintiff's omission of Delaware's borrowing statute highlights why, like *Art Institute*, her other cited cases support dismissal.  For example, Plaintiff lifts the following quote from *David B. Lilly Co. v. Fisher*, 799 F. Supp. 1562, 1568 (D. Del. 1992):  "Generally, statutes of limitations are deemed to be procedural for conflict of law purposes" (Opp. at 8), but again omits the very next sentence:  "[h]owever, Delaware's borrowing statute requires the Court to use the statute of limitations of the foreign state where the cause of action arose if the limitation period is shorter than in Delaware."  799 F. Supp. at 1568 (citations omitted).  Following *Lilly*, then, British Columbia's shorter statute of limitations would apply.

Plaintiff similarly misconstrues *Norman v. Elkin*, 860 F.3d 111 (3d Cir. 2017).  According

to Plaintiff, the *Norman* court "rejected" the premise that "the internal affairs doctrine must apply to procedural matters." Opp. at 8. But the *Norman* court held no such thing, and even if it did, it does not help Plaintiff here, since the court noted that the *Delaware* district court correctly applied *Delaware's* borrowing statute to conclude that *Pennsylvania's* statute of limitations applied. 860 F.3d at 123. Applying *Norman's* reasoning here, even if Delaware's "procedural" law governed, the borrowing statute would apply British Columbia's two-year limitations period.

Plaintiff's other cases are just as unhelpful to her. For instance, in *In re Tops Holding II Corp.*, 646 B.R. 617, 694 (Bankr. S.D.N.Y. 2022) (Opp. at 9), a New York court applied New York's borrowing statute to determine whether New York's or Delaware's statute of limitations applied to a fiduciary duty claim involving a New York resident. Of course, there is no New York party here and even Plaintiff does not suggest New York's borrowing statute applies. And *Willensky v. Lederman*, 2015 WL 327843, at *5 (S.D.N.Y. Jan. 23, 2015) (Opp. at 9), is even more irrelevant. There, a New York court sitting in diversity applied New York choice-of-law rules and its six-year statute of limitations to fraud claims. By contrast, this case does not involve diversity, New York, or fraud. Plaintiff's own cited authorities thus confirm that British Columbia's two-year limitations period applies to Plaintiff's breach of fiduciary duty claim. She did not file the claim until that period had expired. The claim should be dismissed as untimely.

### B.    Plaintiff's Breach of Fiduciary Duty Claim Should Be Dismissed

#### 1.    Defendants Only Owed Fiduciary Duties to SLP

Plaintiff's Opposition confirms that Defendants only owed fiduciary duties to SLP. Indeed, although Plaintiff asserts that Defendants owed fiduciary duties to all "Debtors," her own authority explains that directors only owe "fiduciary duties to the corporation they serve," *i.e.*, SLP. *See Quadrant Structured Prods. Co. v. Vertin*, 102 A.3d 155, 171-72 (Del. Ch. Oct. 1, 2014) (Opp. at

19).  Plaintiff does not try to argue otherwise for two of the Debtors:  Natural Outcomes and SMTC. *Id*.  And for good reason.  Other than naming those entities as Debtors, the Complaint says nothing about them at all.  *See* Compl. 1 n.1.

Nor did Defendants owe fiduciary duties to the remaining Debtor, Structurlam.  Plaintiff argues that Defendants owed Structurlam fiduciary duties by "effectively control[ling]" the company, claiming Defendants had "direct involvement with and oversight of the [Walmart home office] Project."  Opp. at 18-19.  But this is not enough.  As Plaintiff's cited authority, *Kahn v. Lynch Communication Systems, Inc.*, 638 A.2d 1110 (Del. 1994), explains, to establish a fiduciary relationship based on "effective control," Plaintiff must allege a "dominating relationship" showing "*actual control* of [the] corporation['s] conduct." *Id*. at 1114 (emphasis added).  In *Kahn*, the court held that a 43.3% shareholder owed a company fiduciary duties because the plaintiff showed the shareholder "*exercise[d] control* over the business affairs of the corporation," thus "dominating its corporate affairs."  *Id*. at 1114-15.  The court pointed to a board meeting where the shareholder told the company's directors, "[y]ou have to do what we tell you"—after which the company's directors "deferred to [the shareholder] because of its position as a significant stockholder and not because [the directors] decided in the exercise of their own business judgment that [the shareholder's] position was correct."  *Id*.  Likewise, other cases have found control where an individual acted "as a *de facto* manager" of a company, including by signing the company's "certificate of formation," "approv[ing] hiring decisions and employee compensation," and "staff[ing] [the company] with [his] own associates."  *See In re Our Alchemy, LLC*, 2019 WL 4447519, at *6, *9 (Bankr. D. Del. Sept. 16, 2019) (discussing *Triple H Fam. Ltd. P'ship v. Neal*, 2018 WL 3650242, at *14 (Del. Ch. July 31, 2018)).

Plaintiff alleges none of this.  All she claims is that Defendants stayed apprised of

Structurlam's work on the Project. Opp. at 18-19. But those allegations do not suggest Defendants dominated Structurlam's corporate decision-making, "took action on behalf of" Structurlam, or otherwise exerted any control over Structurlam at all. *In re Our Alchemy, LLC*, 2019 WL 4447519, at *9. Without allegations of actual control, Plaintiff cannot establish a "special position of trust implicating fiduciary duties." *Id.*; *see also In re PennySaver USA Publ'g LLC*, 587 B.R. 445, 464-65 (Bankr. D. Del. 2018) (that defendants helped facilitate allegedly fraudulent transfers insufficient to show control). And if Plaintiff relies on the fact that Defendants were directors on SLP's Board, and *SLP* owned 100% of Structurlam, Opp. at 19, that fails, too. There is no dispute that "a parent corporation does not owe fiduciary duties to its wholly-owned subsidiaries or their creditors." *Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 2006 WL 4782378, at *19 (Del. Ch. Aug. 10, 2006). Defendants owed fiduciary duties only to SLP—not to any other Debtor.

### 2.      The Opposition Confirms Plaintiff Improperly Group Pleads

The Opposition also confirms that Plaintiff's Complaint relies on improper group pleading, and the breach of fiduciary duty claim must be dismissed for this reason alone. Plaintiff admits that other than "identif[ying] each individual's role at Walmart," the Complaint alleges only generally that "*Defendants*" as a whole "breached their duties." *See* Opp. at 21-22 (six of the nine bulleted allegations pertained to "Defendants" generally). This is insufficient. As Plaintiff's authority again explains, the Complaint must contain "sufficient *dates*, *details*, and *actions* or *inactions* by the D&Os, collectively *and individually*" as to the "specific conduct that gives rise to the breach of fiduciary duty claims asserted against them" to overcome a "group pleading argument." *In re Furniture Factory Ultimate Holding, L.P.*, 2023 WL 5662747, at *10-11 (Bankr. D. Del. Aug. 31, 2023) (emphasis added); *see also In re PennySaver*, 587 B.R. at 465-66 (dismissing without "distinguish[ing] Defendants from one another and instead lump[ing] them

together"). The Complaint contains none of this. There are no *details* about what specific *action* or *inaction* each Defendant took (or when), and there is not one allegation describing on an *individual* basis how (or when) each Defendant purportedly breached their duties. *See id.*; *see also, e.g.*, Compl. ¶¶ 55-56, 58, 60, 63, 65-66, 68, 76, 83-84. In fact, Plaintiff does not discuss one Defendant, Allen, *at all*. *See* Opp. at 21-22; *see also Genworth Fin., Inc. Consol. Deriv. Litig.*, 2021 WL 4452338, at *22 (Del. Ch. Sept. 29, 2021) (dismissing where complaint made "no specific allegations" against defendants).

### 3.    Plaintiff Fails to Allege Defendants Breached Their Fiduciary Duties

Plaintiff argues that given the "liberal pleading standard," the Complaint sufficiently alleges "breaches of the duties of care, loyalty, and good faith." Opp. at 11. But the Opposition shows the opposite: that Defendants informed themselves about SLP's business and acted in its best interest by trying to keep the Walmart Project on track.

### a.    Plaintiff Does Not Plead a Breach of the Duty of Care

The Opposition recognizes that to plead a breach of the duty of care, Plaintiff must plead facts that Defendants "acted with gross negligence," *i.e.*, that they were "recklessly uninformed or acted outside the bounds of reason." Opp. at 16 (citation omitted). She does neither. At most, Plaintiff hypothesizes that "Defendants somehow did not know basic facts about SLP and Structurlam's financial position." *Id*. at 17. This argument fails for three reasons.

*First*, Plaintiff's assertion that Defendants "did not know basic facts about SLP" does not appear in the Complaint—and she "cannot amend" her pleading in her Opposition. *See Posman v. Bankers Tr. Co.*, 1999 WL 33742299, at *1-2 (Bankr. D. Del. July 28, 1999).

*Second*, and refuting her new allegations, Plaintiff asserts that Defendants *were* informed about SLP's business and finances. Among other things, Plaintiff states that Defendants:

- Attended Board meetings where "confidential information" was "freely exchanged" (Opp. at 22, citing Compl. ¶¶ 39-40);

- Discussed "a litany of items" related to the Project (*id.*, citing Compl. ¶¶ 41-42);

- Joined "calls to discuss matters relating to Debtors' production," where Defendants gained "insight into Debtors' financial situation" (*id.*, citing Compl. ¶¶ 45-46); and

- Were "intimately involved in the Project" and "thus knew specific information about the Project and financing" (*id.*, citing Compl. ¶ 53).

*Finally*, Plaintiff does not argue (either in her Complaint or Opposition) that Defendants "actually made" any decisions on SLP's behalf—much less how those "actions, or failure to act, were grossly negligent." *See In re AgFeed USA, LLC*, 546 B.R. 318, 330 (Bankr. D. Del. 2016). But even if she had alleged such facts, those decisions would be protected by the business judgment rule. *See id.*; *see also* Mot. at 12 (Dkt. 39). Plaintiff's only response is that the Court should not consider the business judgment rule at the pleading stage, claiming it is an "affirmative defense." Opp. at 17. But where a complaint challenges a business decision, Plaintiff "must plead around the business judgment rule by alleging facts that rebut the presumption" *at the pleading stage*. *In re Space Case*, 2024 WL 1628440, at *6 (Bankr. D. Del. Apr. 15, 2024). To do so, Plaintiff must allege that Defendants' decision "was the product of an irrational process" or that the decision was "so far beyond the bounds of reasonable business judgment that its only explanation is bad faith." *Id.* Plaintiff pleads no such facts. Just the opposite, her Opposition shows that Defendants stayed informed about and "closely monitor[ed]" SLP's business—including by attending "weekly" meetings. Opp. at 22; *see also In re Old BPSUSH, Inc.*, 2020 WL 6818435, at *9, *13 (Bankr. D. Del. June 30, 2020) (dismissing where "no allegations" that defendants "were recklessly uninformed" nor "acted in an uninformed manner").

### b.    Plaintiff Fails to Allege a Breach of the Duties of Loyalty or Good Faith

***Duty of Loyalty.*** Plaintiff concedes that to allege a breach of the duty of loyalty, she must

allege that each Defendant either (1) "stood on both sides of [a] transaction and dictated its terms in a self-dealing way," or (2) "received in the transaction a personal benefit that was not enjoyed by the shareholders generally." *See* Opp. at 13. Her Opposition confirms that she pleads neither.

To start, Plaintiff does not allege that any Defendant **"engaged in a self-interested transaction."** *See In re Essar Steel Minn. LLC*, 2019 WL 2246712, at *6 (Bankr. D. Del. May 23, 2019) (dismissing where no allegation of "self-interested transaction"). In her Opposition, Plaintiff claims that "Defendants" "effectively forced themselves into the TSA 2 negotiations." Opp. at 13. But she does not allege this in her Complaint, *Posman*, 1999 WL 33742299, at *1-2, and regardless, Plaintiff alleges no facts suggesting that TSA 2 was a self-dealing transaction— *i.e.*, that its terms "were unfair" or that Defendants "profited from them." *See In re Midway Games Inc.*, 428 B.R. 303, 319 (Bankr. D. Del. 2010) (dismissing loyalty claim where at-issue transaction was not "unfair" to plaintiff). On the contrary, the Complaint alleges that TSA 2 *benefitted SLP* by providing a "financial foundation" with "guaranteed" revenue. *See* Compl. ¶¶ 34-35, 54.

So Plaintiff pivots, arguing instead that Defendants used "confidential information" to "assist Walmart in" insisting "on unreasonable modifications" to TSA 2. Opp. at 13. But "there is absolutely no factual support whatsoever in the Complaint" that Defendants did so. *See In re Sols. Liquidation LLC*, 608 B.R. 384, 401-02 (Bankr. D. Del. 2019) (dismissing complaint "devoid entirely of factual support to establish that the transaction was self-interested"). At most, Plaintiff points to the following: (1) Hooper signed TSA 2 for Walmart; (2) timber production was discussed at "board meetings at which Defendants were present"; and (3) Marsiglio was a "point of contact for negotiation of the entire [home office] project." Opp. at 13-14 (citing Compl. ¶¶ 31-32, 42, 44-45). None of these facts provides a "causal link" to Plaintiff's conclusory assertion that Defendants used *any* "confidential" information to SLP's (or Structurlam's) detriment—indeed,

the facts do not suggest Defendants "assisted" or "insisted on" any alleged TSA 2 "modifications" at all.  *See Essar*, 2019 WL 2246712, at *7 (must allege "direct[] link" that defendant "had a personal interest in the transaction"); *In re Cred Inc.*, 650 B.R. 803, 813 (Bankr. D. Del. 2023) (legal conclusions "must be supported" by facts), *aff'd*, 658 B.R. 783 (D. Del. 2024).

Likewise, Plaintiff does not allege that Defendants **received any personal benefit** from TSA 2 or Walmart's purported breach of that agreement.  *See Space Case*, 2024 WL 1628440, at *8 (dismissing where no allegation defendant "receive[d] a personal financial benefit"); *see also Pfeffer v. Redstone*, 965 A.2d 676, 690 (Del. 2009) (dismissing loyalty claim where no allegation defendants "received a unique financial benefit"); Opp. at 12-15 (no personal benefit alleged). Plaintiff's duty-of-loyalty claim thus should be dismissed.

**Duty of Good Faith**.  Plaintiff's good-faith claim fares no better.  She says that Defendants acted "intentionally" to advance their interests over "the best interests of the corporation."  Opp. at 15.  In support, she points to five paragraphs in the Complaint, claiming those allegations "detail[] how Defendants acted in a manner that advanced Walmart's interests, rather than Debtors.'"  *Id.* (citing Compl. ¶¶ 56, 58, 60, 63, 65).  But the cited paragraphs do not plead *facts*— instead, each paragraph *concludes without support* that Defendants "disregarded Debtors' interests" in favor of Walmart.  *See* Compl. ¶¶ 56, 58, 60, 63, 65 ("Defendants served the interest of their employer"; Defendants failed "to act or intervene to ensure Walmart's compliance"; "Defendants disregarded Debtors' best interests" to "aid Walmart").  As Plaintiff's authority makes clear, her allegations—even at the pleading stage—"require[] more than labels and conclusions," which "are not entitled to the assumption of truth."  *See In re DSI Renal Holdings, LLC*, 574 B.R. 446, 464, 472 (Bankr. D. Del. 2017) (Opp. at 15) (good-faith violation pled where trustee alleged specific facts, including through internal documents, that defendants profited by

obtaining "stock and cash bonuses" through transactions that left debtor as "an empty shell").

The few facts Plaintiff *does* plead do not suggest that any Defendant acted in bad faith. Just the opposite, they suggest Defendants sought to ensure the Walmart Project remained *on track*—which would benefit SLP and Structurlam—by attending "weekly" meetings about the Project, participating in Board meetings where the Project and other matters were discussed, and joining subcommittee calls related to timber production. *See* Opp. at 22 (citing Compl. ¶¶ 39-42, 45-46). These allegations show that Defendants acted "reasonably," not that they acted "fraudulently" and without "even one plausible, and legitimate, explanation" for their conduct. *See In re: Old BPSUSH, Inc*., 2021 WL 4453595, at *12-13 (D. Del. Sept. 29, 2021) (cleaned up). TSA 2 may not have worked out as Structurlam had hoped, but "Delaware courts . . . do not equate a bad outcome with bad faith." *Space Case*, 2024 WL 1628440, at *9.

### C.    Plaintiff's Tortious Interference Claim Should Be Dismissed

Plaintiff's Opposition confirms the pleading deficiencies in her tortious interference claim warranting dismissal. She concedes that (1) Walmart was a party to the contract Defendants allegedly interfered with; (2) Defendants were Walmart employees; (3) under both Arkansas and Delaware law, employees acting within the scope of their authority *cannot* interfere with their employer's contracts; and (4) Defendants acted "to benefit Walmart" in connection with the relevant contract. Opp. at 25. In combination, these admissions confirm that Plaintiff's tortious interference claim should be dismissed because a "party to a contract and its employees and agents, acting within the scope of their authority, cannot be held liable for interfering with the party's own contract." *Faulkner v. Ark. Child.'s Hosp.*, 69 S.W.3d 393, 405 (Ark. 2002).

Plaintiff sidesteps this fatal pleading flaw in her Opposition and instead asserts that by agreeing that Defendants worked at Walmart, Defendants "concede that their interests aligned with

Walmart, and not with SLP." Opp. at 25. This assertion does not help Plaintiff's tortious interference claim, however, and even if it did, Plaintiff gets it backwards. Plaintiff, not Defendants, bears the burden to plead a cognizable claim. And to plead a tortious interference claim under Arkansas or Delaware law, Plaintiff must allege, among other things, that Defendants acted outside the scope of their Walmart employment. By arguing that Defendants' "interests aligned with Walmart," Plaintiff concedes she has not met this burden. Opp. at 25.

Plaintiff's own cited authority again supports dismissal. In *California Safe Soil, LLC v. KDC Agribusiness, LLC*, the court dismissed a tortious interference claim because plaintiffs failed to show that defendants acted "beyond the scope of their agency authority" from the contracting parties. 2025 WL 98479, at *25 (Del. Ch. Jan. 10, 2025) (Opp. at 27). Acts "outside the course and scope of one's employment" include those "carried out for an employee's own personal motives and benefit and not for their employer." *Id.* Plaintiff alleges no facts suggesting any Defendants acted to benefit their "own personal motives." On the contrary, she asserts repeatedly (including in the Opposition) that "Defendants" sought "to benefit Walmart." Opp. at 27.

This reference to "Defendants" highlights another pleading deficiency: Plaintiff never identifies how any Individual Defendant interfered with TSA 2 or any other contract. *See* Opp. at 24-27. She instead lumps them all together and asserts that "Defendants" "exploited their positions . . . to, without justification, benefit Walmart." *Id.* at 25. Such group pleading leaves the Court "guessing which Defendant did what particular act" and thus fails to state a claim. *In re Zohar III, Corp.*, 2021 WL 3124298, at *12 (Bankr. D. Del. July 23, 2021).

Even as to "Defendants" as a whole, Plaintiff alleges no facts that they intentionally interfered with or caused a breach of any contract. *See* Opp. at 24. Plaintiff asserts that Defendants "exploited their access to information"—but never explains *when* or *how* Defendants did so. Such

14

a conclusory assertion falls short of Plaintiff's burden to allege "improper" conduct.  *See, e.g.*, *Hunt v. Riley*, 909 S.W.2d 329, 332 (Ark. 1995) ("[c]onclusions without the necessary factual underpinnings" insufficient to support a tortious interference claim); *CRE Niagara Holdings, LLC v. Resorts Grp., Inc.*, 2022 WL 1749181, at *13-14 (Del. Super. Ct. May 31, 2022) (dismissing without "facts showing [defendant] *actually did* procure a breach of contract").

### D.    The Complaint Should Be Dismissed With Prejudice

Should the Court grant the Motion, it should deny leave to amend because amendment is futile and Plaintiff did not indicate "particular grounds on which amendment is sought."  *In re Our Alchemy, LLC*, 2019 WL 4447541, at *17 (Bankr. D. Del. Sept. 16, 2019).  *First*, amendment is futile because the breach of fiduciary duty claim is time-barred (*supra* II.A) and no additional allegations could revive this untimely claim.  *See Lutz v. Philips Elecs. N. Am. Corp.*, 347 F. App'x 773, 777 (3d Cir. 2009) (affirming denial of leave to amend time-barred claims).  Nor can Plaintiff remedy her deficient tortious interference claim; she concedes that a party, acting within the scope of its authority, cannot interfere with its employer's contract—exactly what she alleged here.  *See Watkins v. Int'l Union, Sec., Police & Fire Pros. of Am.*, 2016 WL 1166323, at *6 (D. Del. Mar. 23, 2016) (denying leave to amend because party "cannot interfere . . . with its own contract").

*Second*, Plaintiff neither articulates the grounds on which she seeks to amend nor explains how she plans to remedy the Complaint's deficiencies.  *See* Opp. at 28.  "[W]ithout any indication of the particular grounds on which amendment is sought," Plaintiff's request "does not constitute a motion within the contemplation of Rule 15(a)" and must be denied.  *United States ex rel. Zizic v. Q2Administrators, LLC*, 728 F.3d 228, 243 (3d Cir. 2013).

### III.    CONCLUSION

Defendants request that the Court grant the Motion with prejudice.

OF COUNSEL:

**LATHAM & WATKINS LLP**

Sean M. Berkowitz (*pro hac vice*)
Nicholas J. Siciliano (*pro hac vice*)
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
sean.berkowitz@lw.com
nicholas.siciliano@lw.com

Whitney B. Weber (*pro hac vice*)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
whitney.weber@lw.com

Dated:  December 17, 2025

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

By:  /s/ *Michael R. Nestor*
Michael R. Nestor (No. 3526)
Elena C. Norman (No. 4780)
Christopher M. Lambe (No. 6846)
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
mnestor@ycst.com
enorman@ycst.com
clambe@ycst.com

*Attorneys for Defendants Brian Hooper,*
*Cindi Marsiglio, and Christine Allen*